NELLIE L. ORVIS, Appellee, v. A. G. PETERSON et ux., Appellants.

No. 47104.

OCTOBER 14, 1947.

Lehmann, Hurlburt, Hossfeld, Blanchard & Cless, of Des Moines, for appellants.

Leo A. Hoegh, Virgil E. Meyers, and W. W. Bulman, all of Chariton, for appellee.

HALE, J.—Plaintiff was aged fifty-four, in good health, and weighed one hundred twenty-eight pounds. At the time of the injury she had been wearing bifocal glasses for eleven years and was wearing them at the time she fell. Her vision with them was good and not blurred.

Defendants owned a frame residence property that had

been converted into an apartment house, on the east side of Tenth Street, facing west, Des Moines, in which they resided on the first floor. There were two apartments on the second floor and plaintiff and her husband, at the time of the accident, resided in the one apartment on the third floor.

In the building there is a porch from which entry was had to a glassed-in lobby. In the east wall of the lobby there are two doors. The south door opens into the Peterson residence through a room called the "office." The door to the north opens into a hallway where the stair is located. This stair is the only access to the second and third floors. The hall in which it is located is just inside the north wall of the building. The stair between the first and second floors runs in an easterly direction and consists of eight treads of nine and one-half inches and nine risers of seven inches. At the top of this flight is a square landing about four-by-four feet. From this landing the second floor is reached by a flight of three similar steps to the south. Coming down from the second floor there is a railing on the left, above and below the landing. This landing is covered with a strip of tightly tacked carpeting, and the treads of the steps, above and below the landing, are equipped with flat corrugated-rubber mats or pads.

Plaintiff and her husband had been separated and during part of the time of their separation she had been a housekeeper at Spencer and came to Des Moines. With her granddaughter, Betty West, she called at defendants' home on October 28th to rent an apartment. At that time she talked to both defendants and inspected and rented a second-floor apartment for $7 a week. During the occupancy of this second-floor apartment she and her husband were remarried and they continued to live there for three weeks, and then rented the third-floor apartment of Mr. Peterson, in which apartment they were living at the time of the accident. Plaintiff testified that both when she rented the second-floor apartment and the third-floor apartment the defendant A. G. Peterson told her he retained control of the light in the lower stairway hall and would turn it on at night and that the tenants were not to operate it. To reach this third-floor apartment from the first floor one went up the stair-

way above mentioned to the second floor and then to the end of the hall and up another flight to the third floor.

Plaintiff testified that after first moving into the building she went up and down the stairs three or four times a day but testified that she did not go out evenings before the accident.

The lower stair hallway on the first floor was lighted by a fifteen-watt bulb inserted in a pull-chain fixture on the south hall wall at the foot of the stairs. There is a similar light on the east wall at the head of the stairs higher than plaintiff's head. Rays from this light reached the landing between the first and second floors and part of the upper three steps of the lower flight. She testified this upper light was seven or eight feet from her right rear.

According to plaintiff's evidence, on December 22, 1944, she and her husband had their evening meal in their third-floor apartment. She decided to mail a small Christmas package at the post-office substation and she inquired of her husband as to the time and was told it was 7:30. She put on a fur coat, extending to just above the hemline of her skirt, above the knee. As she descended the upper steps of the stairway between the second and first floors she was carrying the package under her right arm and took hold of the handrail with her left hand. She was not hurrying, but was walking. She testified she could see the stairway she first went down, since the light was on. The landing was lighted by the light on the second floor. She could see the outlines of the first three steps of the lower flight, or what appeared to be the steps. On reaching the turning landing she took hold of the corner post with her left hand and had hold of this post when she fell. Her hold of this post at the southwest corner of the landing kept her very close to it. She testified that after she took the step she noticed that the light was not on and she lost her balance and fell from the edge of the landing down the stairs. She further testified that as she was going down the stairs she looked to see where she was going but it did not look to be just right as there was not much light; that she lost her balance because the landing appeared to be farther out than it was. There was a shadow and she intended to put her foot back of the edge of what appeared to be the landing, and if she had not stepped where the shadow

appeared she would not have fallen down; that she did not know it was a shadow and she did not see the shadow before she took the step, but she could see the outline of the steps, or what appeared to be the steps, and she fell from the edge of the landing. As she fell her hold of the corner post was broken and she fractured her hip as a result of the fall. Her husband had heard the noise and he and Mrs. Peterson carried her to a bench in the lobby but did not turn on the light. The foregoing is the substance of the statement of facts by plaintiff, which was not amended in any way by defendants. We have set out the facts at considerable length, since the question before the court is whether the testimony introduced by the plaintiff is sufficient to warrant submission of the case to the jury.

I.   The defendants assign as errors of the court in denying their motions: First, that plaintiff failed, as a matter of law, to show that the absence of the light in the lower hall had any causal connection with her fall, or that the shadow of which she complains would have been dispelled had said lower hall light been burning; and second, that the court erred in overruling the defendants' motion for the reason that the undisputed evidence as a matter of law shows that plaintiff's fall was a direct result of either an absence of lookout and attention on her part to see the edge of the landing from which she was stepping, and which was well lighted, or if she did look, her failure to see the edge of the step, which must have been obvious to her.

Defendants concede that plaintiff is able to cite authority to the effect that where a landlord, as a part of the rental agreement, undertakes to see that a certain light in a hall is turned on during the hours of darkness, and fails in that regard, such failure constitutes a ground of negligence. They further concede that the evidence favorable to plaintiff showed such an agreement. They argue in the first division that as a matter of law plaintiff has failed to show that the absence of the lower hall light had anything to do with her accident; in other words, that it was not shown that it was the proximate cause. Citing Buchanan v. Hurd Creamery Co., 215 Iowa 415, 246 N. W. 41; Hecht v. Des Moines Playground and Recreation Assn., 227

Iowa 81, 287 N. W. 259. There can be no doubt that, as argued by defendants, plaintiff's evidence must show that defendants' negligence served as a proximate cause of plaintiff's fall, but we do not think the facts shown in cited cases apply to the facts in this case.

The Buchanan case applied to an action for injury caused by a claimed negligent operation of a truck by defendant's employee, and under the record in that case the question of proximate cause was held to be for the jury. The Hecht case was a damage action based on a drowning in a swimming pool and the facts therein failed to show the negligence alleged.

Defendants argue that when the physical facts are undisputed and conflict with oral testimony they control. This proposition, as a matter of law, is true, but we seriously doubt that the rule applies in this case. The various cases cited by defendants are not applicable to the facts herein. McGlade v. City of Waterloo, 178 Iowa 11, 156 N. W. 680, concerned a claim of negligence by the frightening of a horse; Reid v. Brooke, 221 Iowa 808, 266 N. W. 477, a claim which grew out of an automobile accident; McDaniel v. Stitsworth, 224 Iowa 289, 275 N. W. 572, involved an injury sustained in the stopping of a vehicle on the highway; Hittle v. Jones, 217 Iowa 598, 250 N. W. 689, another automobile accident case; but none of them, so far as the facts here are concerned, does anything more than repeat the principle argued, but is not of much value as applied to the facts in this case.

Defendants argue under this head that the physical facts here, so far as the location of the lights is concerned, establish that the absence of the lower hall light had nothing to do with the plaintiff's injury, and such absence was therefore not a proximate cause. With this contention of defendants we disagree. There was evidence offered on the trial that if the lower light had been burning it would have neutralized, or tended to neutralize, the shadow, and if so, the deceptive appearance caused by the extended shadow would not have resulted. The light bulbs were of equal strength and it would follow, as a natural result, that the light from one bulb would dispel to some extent a shadow cast by the other, but defendants claim that the upper light was obscured by plaintiff's own body. We

do not think that this is shown by the evidence, nor does the evidence indicate that the light in the lower hall bracket, had it been on, would have been entirely intercepted by the bannister and spindles. There was, we think, sufficient evidence to go to the jury on the illumination or lack of illumination of the stairs. There was no such showing of physical facts as would have prevented submission to the jury. A number of cases from other jurisdictions, involving lighting, are cited by defendants. It is unnecessary that they be considered here as the circumstances in the cases vary from those in the case at bar.

II. In Division II of defendants' argument they challenge the showing of freedom from contributory negligence by plaintiff, and in argument state that where an imminent danger is easily discoverable by the exercise of the sense of sight and a person is injured thereby she is guilty of contributory negligence as a matter of law in not keeping a lookout, or if she looks, sees, and does not heed she is equally guilty. Citing Hittle v. Jones, supra, and Hewitt v. Ogle, 219 Iowa 46, 256 N. W. 755.

In the present case it was not a question of having seen the danger but there is evidence that what plaintiff thought she saw deceived her. If the light situation was such that it created a deceptive shadow which caused her to believe that she was stepping on a solid footing, the situation is quite different from the line of cases where the injured person sees but does not pay heed to what he sees. Cases cited by defendants are applicable more to instances where the danger is apparent. So, as to other cases cited. Lepley v. Von Dorn, 139 Neb. 410, 297 N. W. 642, was a case of mere forgetfulness on the part of the plaintiff, who was fully apprised of the danger; Viles v. Thunborg, 164 Wash. 190, 2 P. 2d 666, where the danger was fully apparent and fully known to the plaintiff; Rice v. Goodspeed Real Estate Co., 254 Mich. 49, 235 N. W. 814, where there was no obligation upon the landlord to light the office building and lobby after office hours, and the situation was well known to the tenant; Nash v. Searcy, 256 Ky. 234, 75 S. W. 2d 1052, in which case the stairway was not rented to any person, and the injured person failed to describe the dangerous condition of the steps or to

show that they were not in a reasonably safe condition; Norman v. Shulman, 150 Fla. 142, 7 So. 2d 98, where the landlord was under no duty to tenant's visitor to light the entrance of the building, and hence was not liable under the common law for injury received by her.

Plaintiff cites, in support of her claim of freedom from contributory negligence, Rhodes v. Fuller Land and Improvement Co., 92 N. J. Law 569, 572, 106 A. 400, 401, in which case action was brought on account of defendant landlord's negligence in lighting the stairs and failure in the performance of that duty. The case holds that the true rule is that if a landlord assumes the duty of providing and maintaining a light upon a stairway it continues thereafter to be his duty to exercise reasonable care to maintain a light there until notice of its discontinuance has been given, and failure to perform such duty is negligence. The case states:

"* * * it was open to the jury to find, if they saw fit, from the evidence, that the defendant company assumed the duty of providing and maintaining a light on those stairs, because it realized that their use was likely to be dangerous, even in the daytime, without a light, and that its failure to do so was the proximate cause of Mrs. Rhodes' injury."

The court further holds that the question of the contributory negligence of the plaintiff is for the jury:

"This stairway which she was obliged to use to reach the basement consisted of three steps leading from the main hallway to a landing, then a sharp turn to the left, and then nine steps at the foot, of which the defendant had assumed to provide and maintain a light. The evidence tended to show that Mrs. Rhodes was familiar with the stairway; that she got down the first flight and across the landing safely and had grasped the handrail which was provided at the lower flight and 'was trying to get down the lower steps from the landing' when she noticed that the light was out, lost her footing, and fell."

The facts are very similar and the case properly holds that under such facts it was for the jury to decide the question of the plaintiff's negligence.

In Marwedel v. Cook, 154 Mass. 235, 28 N. E. 140, also cited by defendants, it was held that it was not contributory negligence for the plaintiff to use the stairway, though she knew it to be dark, and was cautioned to use care, when the elevator had stopped running and there was no other way of getting out of the building. See, also, Gallagher v. Murphy, 221 Mass. 363, 108 N. E. 1081, Ann. Cas. 1917E, 594, in which a guest of a tenant was not held contributorily negligent in proceeding in an unlighted hallway which had previously been lighted; Faxon v. Butler, 206 Mass. 500, 92 N. E. 707, 138 Am. St. Rep. 405, 19 Ann. Cas. 666, to the same effect; Heinberg v. Sikora Realty Corp., 110 Misc. 323, 180 N. Y. Supp. 405; Brown v. Wittner, 43 App. Div. 135, 59 N. Y. Supp. 385; Maran v. Peabody, 228 Mass. 432, 117 N. E. 847, in all of which cases the facts were similar to the situation shown by the evidence here, and hold that the question of contributory negligence is for the jury.

We are satisfied that the court was not in error in holding that the questions of negligence and contributory negligence were for the jury and that the plaintiff was not guilty of contributory negligence as a matter of law. Therefore, there was no error in overruling defendants' motions for directed verdict, and their motion for judgment notwithstanding verdict. The rulings and judgment of the district court should be and are affirmed. —Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.